

Signed/Docketed
January 28, 2013

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-31418 MER |
| TERRY SCHWINDT | ) |
| JETT SCHWINDT | ) Chapter 11 |
| | ) |
| Debtors. | ) |

## ORDER

This matter comes before the Court on the *Application to Employ Attorney* (the "Application") filed by debtors-in-possession Terry Schwindt and Jett Schwindt (collectively, the "Schwindts"), and the *United States Trustee's Objection to Debtors' Application to Employ Kutner Miller Brinen, P.C. as Counsel for Debtors* (the "Objection"). The Court has considered the pleadings, exhibits, and testimony, as well as the legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.[1]

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) as it concerns the administration of the estate.

## PRELIMINARY STATEMENT

The Court heard testimony from the Schwindts at the evidentiary hearing held January 4, 2013. At the outset of this opinion, the Court finds both witnesses were credible. The Court believes these witnesses testified truthfully, attempting to obtain a fair and just outcome. The background facts set forth herein are gleaned from testimony and evidence presented at the hearing, and the record in the related Chapter 11 bankruptcy cases.

## BACKGROUND FACTS

The Schwindts are the sole owners and managers of a Colorado limited liability company, Eastridge Transportation, LLC ("Eastridge"). Eastridge's principal business is trucking. Each of the Schwindts holds an equal fifty percent ownership interest in Eastridge, and they derive all income from their

---

[1] Debtors' Exhibits 1 through 11 were admitted into evidence.

employment with that entity, Eastridge.  Mr. Schwindt has over twenty-eight years experience in the trucking industry, and runs the day-to-day operations of Eastridge.  Mrs. Schwindt serves primarily as Eastridge's bookkeeper.

From 2008 to 2009, New Frontier Bank made three loans to Eastridge, each of which was cross-collateralized and personally guaranteed by the Schwindts.  Following the FDIC closure of New Frontier Bank, the three loans were sold to LNV Corp.  Following failed negotiations with LNV, on June 11, 2012, Eastridge filed for relief under Chapter 11 of the Bankruptcy Code (Case No. 12-22262 MER).  On June 13, 2012, this Court entered an Order approving Kutner, Miller, Brinen, P.C. ("KMB") as general counsel for Eastridge.[2]  Eastridge's Schedule F lists a debt owed to Terry Schwindt for a "[l]oan for operating expenses" in the amount of $51,867.91.[3]

In August 2012, LNV filed a lawsuit against the Schwindts, seeking recovery on the personal guarantees.  On October 16, 2012, the Schwindts filed their Voluntary Petition for relief under Chapter 11 and are operating as individual debtors-in-possession.  The Voluntary Petition disclosed the pending Eastridge bankruptcy case.[4]  The Schwindts' Schedules, as amended, do not reflect any debts owed to Eastridge, and Schedule H lists Eastridge as a co-debtor for debts personally guaranteed by the Schwindts.[5]

On November 20, 2012, Eastridge filed its Amended Schedule F, removing Terry Schwindt as a creditor.[6]  In addition, the Schwindts and Eastridge filed a *Disclosure Statement to Accompany Chapter 11 Joint Plan of Reorganization* on December 10, 2012.[7]  The Court notes these cases are not jointly administered.

On October 29, 2012, the Schwindts filed the Application, seeking an order authorizing the employment of KMB pursuant to 11 U.S.C. § 327(a).[8]  The Application makes the following disclosure:

---

[2]  *See* Docket No. 18, Case No. 12-22262 MER.

[3]  Debtors' Exhibit 6.

[4]  Debtors' Exhibit 1.

[5]  Debtors' Exhibits 2, 3 and 4.

[6]  *See* Debtors' Exhibit 7.

[7]  Debtors' Exhibits 8 and 9.

[8]  Unless otherwise noted in the text, all future statutory references are to title 11 of the United States Code.

As is stated above, KMB represents Eastridge in case number 12-22262-MER.  Terry Schwindt is listed as a creditor in the Schedule F filed in the Eastridge case for a loan for operating expenses in the amount of $51,867.91. Although listed as a loan, there are no written loan documents, and this sum is more appropriately characterized as an owner contribution. The Debtors also have an oral lease agreement with Eastridge for the lease of the Debtor's [sic] shop, office and tools located on the Debtors' property. Eastridge uses this property in the ordinary course of its business. The Debtors are also co-debtors on certain of Eastridge's debts, as is disclosed on Schedule H on file in the Eastridge case and as is being prepared in the Debtors' case.[9]

KMB asserts the above facts do not preclude KMB from representing both Eastridge and the Schwindts, and under the circumstances of this case, the dual representation is allowable pursuant to this Court's opinion in *7677 East Berry Ave.*[10]  Although Eastridge is the largest asset of the Schwindts' estate, KMB argues no actual conflict of interest exists.  In addition, KMB argues the dual representation will be more efficient and save money for both estates.

In compliance with FED. R. BANKR. P. 2014(a), the Application is supported by a Verified Statement of Leigh A. Flanagan (the "Verified Statement") disclosing KMB's connection to Eastridge.  The Verified Statement confirms other than that connection, "KMB is not aware of any other connection with the [Schwindts], creditors, or any other party in interest, their respective attorneys and accountants, the United states Trustee, or any person employed in the Office of the United States Trustee, other than as set forth herein."[11]  Most importantly to the instant matter, the Court notes the Verified Statement reveals no connection to any creditors of the Schwindts.

The United States Trustee ("UST") filed the only Objection to KMB's employment as the Schwindts' counsel, "requesting the Court deny the Application because KMB has **an actual conflict of interest** with the Debtors' bankruptcy estate and therefore is unable to satisfy the requirements of § 327(a) of the Bankruptcy Code."[12]  In support, the UST also relies on *7677 East Berry Ave.*, quoting:

If it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without

---

[9]  Application, p.2, ¶ 8.

[10]  *In re 7677 East Berry Ave. Assoc., LLP*, 419 B.R. 833 (Bankr. D. Colo. 2009).

[11]  *See* Application.

[12]  Objection, p. 2, ¶ 7 (emphasis added).

that other representation, then they have a conflict and an interest adverse to the estate. An actual conflict exists if there is an active competition between two interests, in which one interest can only be served at the expense of the other. As a general principle, professional persons employed by the trustee should be free of any conflicting interest which might, in the view of the trustee or the bankruptcy court, affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case.[13]

In the Objection, the UST contends there are two actual conflicts of interest creating competition between the estates which would disqualify KMB as counsel for both debtors: 1) the Schwindts have unsecured debts which are not joint obligations of Eastridge and therefore the characterization of the $51,867.91 as a loan or an owner contribution to Eastridge creates competition between the two estates to see which one will benefit at the expense of the other; and 2) the Schwindts' oral lease with Eastridge will create competition between estates with respect to the proper lease payment amount and term over the course of the lease.

## DISCUSSION

### A.   Employment Under § 327(a).

Pursuant to § 327(a), KMB seeks approval of its employment as general bankruptcy counsel for the Schwindts as debtors-in-possession.  "A bankruptcy court has the authority and the responsibility to only approve employment of professionals who meet the minimum requirements set forth in § 327(a), independent of objections. . . .  An applicant under § 327(a) has the burden of establishing by application and accompanying affidavit that its chosen professional is qualified."[14]  Based on the facts of this case, the limited issue before the Court is whether KMB meets the minimum requirements pursuant to § 327(a).  As set forth herein, the Court concludes KMB satisfies these requirements.

"An analysis of the issue of employment of bankruptcy counsel must begin with the premise that debtors should be free to select counsel of their choice. However, '[t]his general principal [sic] is tempered by ethical restraints placed upon attorneys by the Rules and the Code.  It is also modified and controlled by

---

[13]  *7677 East Berry Ave.*, 419 B.R. at 843-44 (quoting *In re Git–N–Go, Inc.*, 321 B.R. 54, 58–59 (Bankr. N.D. Okla. 2004)) (internal citations and quotations omitted).

[14]  *In re Interwest Business Equipment, Inc.*, 23 F.3d 311, 317–318 (10th Cir. 1994) (citation omitted).

statutory restrictions contained in the Bankruptcy Code which prohibit the attorney from representing an interest materially adverse to the estate.'"[15] Section 327(a) of the Bankruptcy Code states in pertinent part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title.[16]

In *7677 E. Berry Ave.*, this Court determined § 327(a) sets forth two requirements: (1) counsel must "not hold or represent an interest adverse to the estate" and (2) must be a "disinterested person."[17]  "Together, the statutory requirements of disinterestedness and no interest adverse to the estate 'serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'"[18]  "The propriety of employment under § 327 must be examined on a case-by-case basis."[19]

Applying the case-by-case approach under § 327(a), bankruptcy courts are not required to disqualify counsel for "potential" conflicts of interest.  As the United States Bankruptcy Court for the District of New Mexico articulated:

> Section 327(a) of the Bankruptcy Code imposes a *per se* disqualification if counsel for the estate has an actual conflict of interest, whereas the Court has **discretion** to disqualify counsel that has a potential conflict of interest.  *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3rd Cir. 2002); *In re Marvel Entertainment Group, Inc.*, 140 F.3d, 46, 476 (3rd Cir. 1998); *In re Dick Cepek, Inc.*, 339 B.R. 730, 740 (9th Cir. BAP 2006).  Whether an attorney represents or holds an interest

---

[15]   *In re TMA Associates, Ltd.*, 129 B.R. at 645 (citing *Vanderbilt Associates, Ltd.*, 111 B.R. 347, 351 (Bankr. D. Utah 1990).

[16]   § 327(a) (emphasis added).  Pursuant to 11 U.S.C. § 1107(a), "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, . . . of a trustee serving in a case under this chapter."  For the purposes of employment of counsel, a debtor-in-possession must meet the same standards as a trustee.

[17]   *7677 E. Berry Ave.*, 419 B.R. at 841 (citing *In re Cook*, 223 B.R. 782, 789 (10th Cir. BAP 1998)).

[18]   *Id.* (citing *In re Crivello*, 134 F.3d at 836) (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994))).

[19]   *Id.* at 844.

adverse to the interest of the estate, because of either an actual or potential conflict of interest, should be determined on a case-by-case basis. *Dick Cepek, Inc.*, 339 B.R. at 740. Disqualification based on a potential conflict of interest should take into account the nature and extent of the potential conflict, and the likelihood that the potential conflict might become an actual one. *Id.*[20]

To be clear, this Court adopts this reasoning, and concludes § 327(a) does not mandate disqualifying counsel for potential conflicts.

In addition, multi-debtor representation under Section 327(a) is also determined on a case-by-case basis, and "rather than disapproving of multi-debtor representation as a *per se* conflict, courts should examine the factual circumstances surrounding the representation to determine whether it is appropriate."[21] Consistent with the case-by-case approach, in *7677 E. Berry Ave.*, this Court adopted the majority position concluding representation of a principal shareholder does not, *per se*, constitute representation of an interest adverse to the estate under § 327(a).[22]

Ultimately, the case-by-case approach under § 327(a) provides a flexible framework for the Court to determine whether employment of counsel is appropriate.

---

[20] *In re Platinum Oil Properties, LLC*, 2009 WL 5201851, at *10 (Bankr. D.N.M. Dec. 23, 2009) (emphasis added).

[21] 3 COLLIER ON BANKRUPTCY ¶ 327.04[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012) (collecting cases); *see also Hogil Pharm. Corp. v. Sapir (In re Innomed Labs, LLC)*, 2008 WL 276490, *7 (S.D.N.Y. 2008) ("Whether an adverse interest exists is a determination that must be made on a case-by-case basis."); *In re Huntco, Inc.*, 288 B.R. 229, 234 (Bankr. E.D. Mo. 2002)("[T]he court's inquiry as to whether a law firm represents an interest adverse to the estate under § 327(a) is a fact specific analysis that is case specific."); *In re EWC, Inc.*, 138 B.R. 276, 284 (Bankr. W.D. Okla. 1992); *In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3rd Cir. 1991) (holding "[t]he existence of inter-debtor claims is . . . no longer an automatic ground for disqualification of counsel for the trustee. Section 327 focuses the inquiry on whether there is an actual conflict of interest."); *In re Hurst Lincoln Mercury, Inc.*, 80 B.R. 894, 895 (Bankr. S.D. Ohio 1987).

[22] *See, e.g.*, *Interwest*, 23 F.3d at 318-19; *In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3rd Cir. 1991); *In re Freedom Solar Center, Inc.*, 776 F.2d 14, 17 (1st Cir. 1985); *Hogil Pharm. Corp. v. Sapir (In re Innomed Labs, LLC)*, 2008 WL 276490, *7 (S.D.N.Y. 2008); *In re Huntco, Inc.*, 288 B.R. 229, 234 (Bankr. E.D. Mo. 2002); *In re EWC, Inc.*, 138 B.R. 276, 284 (Bankr. W.D. Okla. 1992); *In re Hurst Lincoln Mercury, Inc.*, 80 B.R. 894, 895 (Bankr. S.D. Ohio 1987).

**B.      KMB Does Not Hold or Represent an Adverse Interest to the Estate.**

The phrase "hold or represent an interest adverse to the estate" is not defined in the Bankruptcy Code.  However, the United States Bankruptcy Court for the District of Utah examined this phrase and established definitions of "hold an interest adverse to the estate," and "represent an adverse interest."[23]  The *Roberts* Court defined "hold an interest adverse to the estate" as follows:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.[24]

*Roberts* went on to define "represent an adverse interest" as "to serve as agent or attorney for any individual or entity holding such an adverse interest."[25]

This Court has adopted the *Roberts* definitions, as have numerous other courts.[26]  In addition, this Court expressly agreed with the Second Circuit Court of Appeals finding "counsel will be disqualified under section 327(a) only if it **presently** 'hold[s] or represent[s] an interest adverse to the estate,' notwithstanding any interests it may have held or represented in the past."[27]

Here, the UST opposes employment of KMB as counsel, asserting competition exists between estates with respect to the $51,867.91 and the oral lease for the shop.[28]  There is no question Eastridge and the Schwindts are related to each other, and these debtors-in-possession have proposed a Joint Plan of Reorganization.  However, simply because KMB represents Eastridge

---

[23]   *In re Roberts*, 46 B.R. 815, 826-827 (Bankr. D. Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987) (en banc).

[24]   *Id.* at 827.

[25]   *Id.* at 827.

[26]   *7677 East Berry Ave.*, 419 B.R. at 842.  *See also In re AroChem. Corp.*, 176 F.3d 610, 623 (2nd Cir. 1999); *In re Crivello*, 134 F.3d at 835; *In re Cook*, 223 B.R. at 789; *In re Harwell*, 2008 WL 239559, at *3 (D. Colo. Jan. 25, 2008); *In re Platinum Oil Properties, LLC*, 2009 WL 5201851, at *10 (Bankr. D.N.M. Dec. 23, 2009); and *In re Boot Hill Biofuels, LLC*, 2009 WL 982192, at *8 (Bankr. D. Kan 2009).

[27]   *7677 East Berry Ave.*, 419 B.R. at 842 (citing *AroChem*, 176 F.3d at 623) (emphasis added).

[28]   *See* Docket No. 33.

does not mean KMB holds or represents an adverse interest to the Schwindts' estate.

With respect to the $51,867.91 loan/contribution distinction, Terry Schwindt testified the initial characterization in Eastridge's Schedule B of the $51,867.91 as a loan was nothing more than a mistake, and the Eastridge Schedules were amended to correct this oversight.[29]  Mr. Schwindt also testified the $51,867.91 is reflected as a contribution on the company books, there are no loan documents, and no repayment terms.  Mr. Schwindt confirmed the Schwindts have no claim against Eastridge, and Eastridge has no claim against the Schwindts.  Mr. Schwindt testified pre-petition and post-petition, the Schwindts maintained separate bank accounts from Eastridge.

This testimony was bolstered by Mrs. Schwindt, who confirmed the Schwindts' tax returns do not reflect any loans to Eastridge, only owner contributions.  Further, she stated any amounts paid by the Schwindts for Eastridge expenses are reflected on the books as contributions.  The UST did not present any evidence to contradict this testimony, and the Court finds the total $51,867.91 paid to Eastridge by Terry Schwindt is an owner contribution, not a loan.  Therefore, the Court also finds the Schwindts are **not** creditors of Eastridge.

With respect to the shop used by Eastridge, Mr. Schwindt testified the Schwindts obtained a loan from Wells Fargo Financial Leasing to build the shop. The Schwindts entered into a lease agreement with Wells Fargo Financial Leasing to lease the shop, and Eastridge executed a corporate guaranty for payments under the lease.[30]  Mr. Schwindt testified the Schwindts and Eastridge have an oral lease, under which Eastridge makes the monthly lease payment in the amount of $780 to Wells Fargo Financial Leasing directly.  He further stated Wells Fargo Financial Leasing is aware of this arrangement, and the payments are current.  Finally, the Disclosure Statement to Accompany the Joint Plan of Reorganization proposes Eastridge, as the commercial guarantor, will continue to make each of these monthly payments to Wells Fargo Financial Leasing.[31]

---

[29]  Pursuant to FED. R. BANKR. P. 1009(a), "[a] voluntary petition, list, schedule or statement may be amended by the debtor as a matter of course at any time before the case is closed."  Here, neither Chapter 11 case has been closed.

[30]  *See* Debtors' Exhibit 11.

[31]  "The Class G Claim is fully secured by the 42x80x15 Town & Country Lester Post Frame Building. . . . Eastridge uses the Town & Country Lester Post Frame Building in its day to day operations, executed a Corporate Guaranty of this debt, and has historically paid Wells Fargo Financial Leasing directly on this loan pursuant to an oral lease between Schwindt and Eastridge.  Eastridge will continue to pay the Class G claimant post-confirmation."  Debtors' Exhibit 9, at p. 23.

At the hearing, the UST raised a third issue with respect to the 1998 Wilson Trailer owned by the Schwindts, but used by Eastridge.  Mr. Schwindt explained Eastridge makes the monthly payments directly to First Farm Bank under the applicable loan documents.[32]  He testified Eastridge was current on the monthly payments, and the Joint Plan of Reorganization proposes Eastridge will continue to make each of these monthly payments to First Farm Bank.

In this case, the Court finds Eastridge and the Schwindts presently have common interests and no actual conflicts of interest exist.  Neither of the Schwindts are creditors of the Eastridge estate, and there is no indication the two estates are pursuing causes of action against each other.  Moreover, KMB does not presently represent any creditors, nor does it represent, at least at present, any injurious economic interest to this estate.  The Court also finds KMB does not possess a predisposition for bias to one estate over the other under these circumstances.  At this time the Court finds there is no competition between the interests of the two estates, and therefore, KBM does not hold or represent any interest adverse to this estate.

Certainly, circumstances could change during the course of the representation by KMB, which would warrant revisiting the Application.  The Application contemplates this precise issue, stating as follows: "Should any additional facts concerning the relationship between the [Schwindts] and Eastridge come to light, KMB will supplement this Application.  Further, if any issue arises in this case in which the [Schwindts] and Eastridge are adverse to each other, the [Schwindts] will hire special conflicts counsel to handle the matter."[33]  This provision protects the Schwindts' estate from any potential conflicts which may arise during the course of representation, and Mr. Schwindt acknowledged at the hearing if a conflict arises he would need to obtain special counsel.  Indeed, if a conflict develops, KMB's appointment may be terminated and its compensation revisited.[34]  However, exercising its discretion, the Court finds it unlikely the potential conflicts raised by the UST warrant disqualification of KMB as general counsel under § 327(a).

---

[32]  *See* Debtors' Exhibit 10.

[33]  Application, p. 3, ¶ 12.

[34]  Section 327 establishes whether counsel may be employed by the debtor-in-possession, not whether said employment may be compensated from estate funds.  *See Lamie v. U.S. Trustee*, 540 U.S. 526 (2004).  Section 327(e) provides the Court with a second opportunity to evaluate fee applications for professional to determine whether "it is in the best interest of the estate" for the professional's continued employment.  Further, § 328(c) provides an additional safeguard, authorizing the Court "at any time during such professional person's employment under section 327" to disallow or limit compensation if counsel becomes disinterested or holds an interest adverse to the estate.  *See* § 328(c); *see also Gray v. English*, 30 F.3d 1319 (10th Cir. 1994).

**C.     KMB is a Disinterested Person.**

Section 101(14) defines "disinterested person" as a person who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.[35]

In this case, KMB clearly does not fall within § 101(14)(A) or (B).  With respect to  § 101(14)(C), the Bankruptcy Court for the Southern District of New York has stated:

It is well-recognized that the meaning of the phrase "interest materially adverse" in the definition of a disinterested person overlaps with that of "interest adverse" in the first prong of § 327(a) and, together, they form one hallmark with which to evaluate whether professionals seeking court-approved retention (or to remain retained by the estate) meet the absence of adversity requirements embodied in the Bankruptcy Code.[36]

Subsection (C), "commonly referred to as the 'catch-all clause,' is broad enough to exclude an attorney with some interest or relationship that 'would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'"[37]

As noted above, the Court found based on the testimony at the hearing the Schwindts are not creditors of Eastridge, and no actual conflict exists.  There is also no evidence of preferential transfers, fraudulent transfers or other causes of action between the Schwindts and Eastridge.  The Schwindts are the sole owners of Eastridge, derive all of their income from Eastridge, and Eastridge is

---

[35]  § 101(14).

[36]  *In re Vebeliunas,* 231 B.R. 181, 189 (Bankr. S.D.N.Y. 1999) (citations omitted).

[37]  *In re Cook*, 223 B.R. at 789 (citing *In re BH & P Inc.*, 949 F.2d at 1309) (*in turn quoting Roberts*, 46 B.R. at 828 n.26); *accord. 7677 E. Berry Ave.*, 419 B.R. at 843.  The Court acknowledges FED. R. BANKR. P. 2014 adds a disclosure requirement to enforce the "disinterestedness" prong of § 327.  This is not an issue in the instant case, where all related connections between KMB and the debtors have been disclosed.

their largest asset.  These entities have common goals for reorganization, and there does not appear to be "an active competition between two interests, in which one interest can only be served at the expense of the other."[38]  Therefore, the Court finds KMB's representation of both the Schwindts and Eastridge does not create an interest materially adverse to the estate, and KMB is disinterested.

**D.    Section 327(c) is Inapplicable to the Instant Matter.**

Section 327(c) provides as follows:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.[39]

Section 327(c) contains a limited exception to the general rule set forth in § 327(a) for employment of a professional.[40]  As the Court explained in *7677 E. Berry Ave.*:

> Although counsel may have "represented an interest adverse to the estate" within the meaning of § 327(a), § 327(c) provides one of the above-mentioned limited exceptions by stating an attorney will not be disqualified based solely on prior representation of a creditor, unless there is an actual conflict, in which case disqualification is mandatory. 11 U.S.C. § 327(c). *See AroChem Corp.*, 176 F.3d at 624.  Under this provision, the existence of inter-debtor claims does not create a *per se* prohibition of counsel representing both estates.[41]

The § 327(c) exception to the general rule under § 327(a) only applies when a professional seeking employment as counsel for a trustee or debtor-in-possession also represents a creditor of the estate.  In *Interwest*, the United States Court of Appeals for the Tenth Circuit explained the interaction between § 327(a) and (c) as follows:

---

[38]  *In re Git–N–Go, Inc.*, 321 B.R. at 58 (quoting *In re BH & P, Inc.*, 103 B.R. at 563).

[39]  § 327(c).

[40]  *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998); *see also 7677 E. Berry Ave.*, 419 B.R. at 841.

[41]  *Id.* at 844 (discussing the "actual conflict" standard under § 327(c), not § 327(a)).

The requirements of subsection (a) are threshold requirements to be met even if subsection (c) is implicated. **Subsection (c) addresses the situation where dual representation of a creditor and debtor** is the only reason advanced for disqualification and the professional is otherwise qualified. Although it is not a model of clarity, subsection (c) as it is currently worded is **intended to allow joint representation of a trustee and of a creditor of the estate, if there is no apparent conflict of interest**.   Even then, if another creditor or the U.S. trustee objects, the bankruptcy judge can disqualify a professional *solely* on the basis of simultaneous representation, *if* it finds the joint representation creates an actual conflict.[42]

Therefore, the Court's inquiry ends where the threshold requirements of § 327(a) are satisfied, unless § 327(c) (or any other exception to the general rule) is implicated.

As set forth above, the Court concludes the Schwindts' employment of KMB as general counsel under § 327(a) is proper because KMB is disinterested and does not hold or represent an interest adverse to the estate.  Thus, the threshold requirements of § 327(a) are satisfied.  Based on the evidence presented, the Court also determined the Schwindts are not creditors of Eastridge, there are no inter-debtor claims between the Schwindts and Eastridge, and no conflicts of interest between estates exist.  Because KMB is not seeking dual representation of a debtor and a creditor of the estate, the Court finds the exception under § 327(c) is not applicable to the instant matter.[43]

---

[42]  *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316 (10th Cir. 1994) (emphasis added).

[43]   At the evidentiary hearing, counsel for the UST blurred the requirements under § 327(a) with those set forth in § 327(c), with respect to multi-debtor representation, dual representation of a debtor and creditors, actual conflicts of interest, and potential conflicts of interest.  The UST's written Objection alleges employment is improper under § 327(a) because two "actual" conflicts exist, and in the Objection, the UST relies on the false premise Mr. Schwindt is a creditor of Eastridge.  At the close of evidence, counsel for the UST seemed to abandon the "actual" conflict argument.  Purportedly relying on *Colorado Nat'l Bank v. Ginco (In re Ginco)*, 105 B.R. 620 (D. Colo. 1988) and *Interwest Business Equipment, Inc.*, 23 F.3d 311 (10th Cir. 1994), counsel contended even in the absence of any actual conflict of interest, the Bankruptcy Code requires disqualification of counsel under § 327(a) if a "potential" conflict exists.  The Court is unpersuaded by the UST's argument, and as discussed in Section A., *supra*, § 327(a) does not require courts to disqualify counsel even if a potential conflict exists.  Moreover, the cases cited by the UST incorporate the case-by-case approach applied by this Court in reaching its conclusion.

**CONCLUSION**

Based on the foregoing,

IT IS HEREBY ORDERED the Application to Employ Kutner, Miller, Brinen, P.C. as Counsel for Terry Schwindt and Jett Schwindt (Docket No. 18) is GRANTED.  Terry Schwindt and Jett Schwindt are authorized to employ and appoint Kutner, Miller, Brinen, P.C. to represent them as counsel in this case pursuant to 11 U.S.C. § 327(a).

IT IS FURTHER ORDERED the fees and costs charged by Kutner, Miller, Brinen, P.C. are subject to allowance or review by the Court in accordance with 11 U.S.C. §§ 329, 330 and 331.

Dated January 28, 2013, *nunc pro tunc* October 16, 2012.

BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge